UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENTIN C. LASTER,

    Plaintiff,                        Case Nos.    06-13508
                                                      05-71140

v.                                        District Judge John Corbett O'Meara
                                                Magistrate Judge R. Steven Whalen

DR. GEORGE PRAMSTALLER, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Before the Court is Defendants Mary Wingard, Denotra Jackson and Seetha Vadlamudi's Motion for Summary Judgment [Doc. #121 in case no. 05-71140; Doc. #115 in case no. 06-13508], filed June 28, 2010, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendants' Motion be GRANTED, dismissing these Defendants with prejudice and consequently denying as moot the same Defendants' earlier Motion to Dismiss [Doc. #109 in case no. 05-71140 and Doc. #102 in case no. 06-13508].[1]

**I. BACKGROUND FACTS**

        Plaintiff, a Michigan Department of Corrections ("MDOC") inmate, currently housed at the Gus Harrison Correctional Facility in Adrian, Michigan, originally filed suit on March 22, 2005, alleging Eighth Amendment violations by MDOC medical staff. Case no. 05-71140, *Doc. #1*. On March 6, 2006, the District Court adopted the undersigned's recommendation to dismiss claims based on Plaintiff's failure to exhaust his administrative remedies, dismissing the claim without prejudice. *Doc. #34-35*. On June 21, 2007, the Sixth Circuit reversed the District Court's judgment pursuant to *Jones v. Bock,* 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Case no. 06-1611. The case was reopened in this Court on August 7, 2007.

---

[1] On June 26, 2008, I ordered the two cases consolidated, noting that they "are, in fact, one in the same, involving the same claims against the same Defendants."

In the meantime, Plaintiff filed a second complaint on August 3, 2006, expanding on his original allegations to include events postdating the first action. Case no. 06-13508. The cases were consolidated on June 26, 2008. *Doc. #73.*

Plaintiff alleges that prison medical staff was deliberately indifferent to his medical needs both before and after his 2004 hip surgery.[2] Case no. 06-13508, *Complaint* at 21 of 50. He alleges that Defendant physicians failed to prescribe needed medication, claiming further that other medical staff failed to grant him a "special accommodation" status allowing the use of a wheelchair/walker, designated chow hall seating, a lower bunk assignment, and a "special shower accommodation." *Id.* at 13 of 50. Plaintiff also alleges that he was transferred in retaliation for filing grievances regarding his medical care. *Id.* at 7-8 of 50.

As to Defendant Wingard, an MDOC Corrections Officer at RRF, Plaintiff alleges that starting on December 30, 2004, Wingard began issuing meritless misconduct tickets against him in retaliation for his filing of lawsuit against Wingard's "best friend," Health Unit Manager ("HUM") Daniels. *Id.* at 11, 22-23 of 50. Plaintiff also alleges that when he attempted to grieve Wingard, the grievance coordinator deliberately "killed" the grievance by issuing a misconduct ticket to Plaintiff regarding the events surrounding the grievance, thus making Wingard's actions non-grievable under MDOC policy. *Id.* at 11, 15, 23 of 50.

Claims against Defendant Vadlamudi, a medical doctor who treated inmates at the Ryan Road Facility ("RRF") in a backup capacity are as follows. Plaintiff alleges that on December 29, 2005, Dr. Vadlamudi allowed Defendant Jackson, an R.N., to "crush" his Ultram pills despite notes in his treating records stating that his medication should not be crushed. *Complaint* at 9, 25 of 50. Plaintiff alleges that the crushing of the Ultram led to vomiting, diarrhea, heart palpitations, and "convolutions." *Id.* at 17 of 50. He alleges further that Dr. Vadlamudi discontinued his blood pressure and cardiac medications. *Id.* at 9, 25 of 50. As to Defendant Jackson, an R.N. working

---

[2]Because Plaintiff did not name present Defendants in the original lawsuit, his allegations are drawn from the later case.

at RRF, Plaintiff alleges that she bears responsibility for recommending to Dr. Vadlamudi that his medication be crushed. *Id.* at 9, 17, 25 of 50. Plaintiff requests compensatory and punitive damages against all Defendants.

### III. SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. ANALYSIS

Defendants argue first that Plaintiff failed to exhaust his administrative remedies before filing suit, entitling them to dismissal without prejudice. *Defendants' Brief* at 24-35. While 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," the statute also allows the court dismiss a claim on the merits *without* requiring exhaustion. § 1997e(c)(2).

"Because defendants are entitled to summary judgment on the merits, the Court need not consider whether plaintiff's claims are exhausted." *Clark v. Caruso,* 2010 WL 746417, *10 (E.D.Mich.2010) (Komives, M.J.)(citing *Thomas v. Brockbank,* 195 Fed. Appx. 804, 808-09 (10th Cir.2006)); *see also Casanova v. Dubois,* 289 F.3d 142 (1st Cir.2002). In the present case, both the First Amendment retaliation claims against Defendant Wingard and Eight Amendment claims against Defendants Vadlamudi and Jackson are dismissible on their merits, mooting the question of whether they are entitled to dismissal without prejudice for failure to exhaust.

To the extent that Plaintiff also alleges substantive due process violations by Defendants Vadlamudi and Jackson regarding his medical care, these claims are subsumed by the Eight Amendment. *Smith v. Michigan*, 256 F.Supp.2d 704, 707 (E.D.Mich.2003)(Roberts, J.)(citing *Estelle v. Gamble,* 429 U.S. 97, 104-105; 97 S.Ct. 285, 291-292, 50 L.Ed.2d 251 (1976)). Likewise, due process claims against Wingard are properly analyzed as a First Amendment retaliation claim. *Id.* (citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 387-88 (6th Cir.1999)).

### A. Eighth Amendment Claims

#### 1. Basic Principles

Under the Eighth Amendment, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle,* 429 U.S. at 103-104; 97 S.Ct. at 290-291. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell*

*v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

### 2. Defendants Jackson and Vadlamudi are Entitled to Summary Judgment

The sole factual claim against Defendant Jackson is that she administered Plaintiff's Ultram pills crushed instead of tablet form on suspicion that he was "cheeking" the tablets then selling them to other prisoners. *Complaint* at 9, 25, 50. First, Jackson, noting that she lacked the authority to either prescribe, discontinue, or direct the means of dispensing prescription medicine, indicates that her only contact with Plaintiff would have been in administering medication in the form prescribed by a physician. *Affidavit of Denotra Jackson* at ¶¶3-19. Moreover, she notes that crushing the Ultram tablets did not equate with "adulterating" the medicine as alleged by Plaintiff. *Id.* at ¶12. Finally, Jackson notes that Ultram is not listed among medicines which should not be crushed. *Id* at ¶20; Exhibit A, *Dock. #121-11* at 13-20 of 29. Became Plaintiff's allegation that receiving Ultram in a crushed form causing side effects does not state a plausible Eight Amendment claim of deliberate indifference, claims against Jackson are subject to dismissal.

For overlapping reasons, Vadlamudi is also entitled to summary judgment. Her affidavit states that Plaintiff's Ultram was ordered crushed on December 30, 2005 because he had been caught "cheeking" the painkiller on the previous day. *Affidavit of Seetha Vadlamudi* at ¶22, *Doc. #121-12*. Indeed, Defendants' Exhibits show that Plaintiff was previously charged and convicted of a major misconduct for opiate abuse. *Doc. #121-9,* at 16 of 53. To the extent that Plaintiff alleges that Dr. Vadlamudi was unresponsive to his earlier kites, she notes that in her limited role as a substitute care giver at RRF, she would have not have received his kites. *Id.* at ¶9. She notes that Plaintiff's allegation that his other prescription medicine was discontinued on December 30, 2005

-5-

is contradicted by a Step One grievance response stating that Plaintiff did not experience any interruption in his medication schedule. *Id.* at ¶12. She points out further that Plaintiff acknowledged that his prescriptions had been "reinstated" between December 30, 2005 and the filing of the grievance several days later.  *Id.* at ¶10; Grievance no. RRF 06-01-000024-12f.  Even assuming the truth of the allegations that Plaintiff's medicine was withdrawn for several days and that the cessation amounted to an Eighth Amendment claim, he cannot show that Dr. Valamudi, a substitute physician, was responsible for the these actions.

Finally, Dr. Vadlamudi notes that on the one occasion she personally examined Plaintiff (on a fill-in basis in September, 2005) she completed a "Special Accommodation" notice allowing Plaintiff to have a ground-floor room, a bottom bunk, crutches, a cane, and an authorization to use the facility's elevator.  *Id.* at ¶21.  Because Plaintiff cannot show that present Dr. Vadlamudi committed malpractice, much less an Eighth Amendment violation, these claim should be dismissed.

### B. Retaliation Claims Against Wingard Should Also be Dismissed

Defendant Wingard denies that the misconduct tickets she issued to Plaintiff during his second stay at RRF (December 10, 2004 to February 24, 2006) were motivated by retaliatory animus.  She refutes Plaintiff's claim that she issued him four major misconduct tickets, noting that she issued only *two* of the four tickets given between December 30, 2004 and October 12, 2005. *Defendants' Brief* at 19-20.  She contends that the fact that  Plaintiff was ultimately found guilty of the policy violations (and that none of the verdicts were overturned on appeal) provides legitimate, non-retaliatory reasons for the ticket issuance.  *Id.* at 21.

To prevail on a First Amendment retaliation claim, a plaintiff must show he (1) "engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* at 394. *Dean v. Byerley,* 354 F.3d 540, 551 (6th Cir.2004) ( *citing Thaddeus-X, supra,* 175 F.3d at 394-95).

-6-

To be sure, Plaintiff's filing of arguably non-frivolous grievances and a lawsuit complaining of prison conditions both constitute "protected conduct." *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir.2000); *Thaddeus-X,* at 391. Likewise, the issuance of a major misconduct ticket is an "adverse action." *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir.2002). However, Plaintiff's retaliation claim against Wingard founders on the absence of a causal connection between the protected conduct and adverse action. At the time Wingard issued the first misconduct ticket (December 30, 2004) Plaintiff had not filed a grievance, much less a lawsuit against her. Even assuming the truth of Plaintiff's assertion that he had made *informal* complaints against Wingard on previous occasions, the fact that Plaintiff was found guilty of the misconduct tickets defeats the "causal connection" between his alleged complaints and the misconduct ticket.

Plaintiff further attempts to meet the causal connection requirement by asserting that Wingard issued the grievance in retaliation for a lawsuit he filed against Wingard's coworker, RRF's HUM Daniels on December 14, 2004. *Complaint,* Case no. 06-13508 at 11, 22-23 of 50; Case no. 04-74866. However, Defendants note that the case against Daniels, dismissed on January 19, 2005 for failure to exhaust, was never served on any of Defendants. *Id.* Plaintiff presents no credible evidence that Daniels, much less Wingard, was ever aware of the case or that Wingard avenged the lawsuit against Daniels by writing misconduct tickets. Again, Plaintiff's theory that Wingard issued the misconduct tickets against him in response to the assertion of his constitution rights is defeated by the fact that he was found guilty of both the December 30, 2004 and February 9, 2005 charges - neither of which were reversed on appeal. *Doc. #121-9,* 34 of 53; *Id.* at 38 of 53. *Thaddeus-X, supra*, 175 F.3d at 395 ("if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct'").[3]

---

[3] Plaintiff's responds by claiming that Wingard threatened to retaliate unless he dropped his grievances/suit against Daniels. *Doc. #123* at 4 of 50. He claims that he dropped the lawsuit against Daniels in response to Wingard's threat. *Id.* However, the Daniels lawsuit was dismissed in January, 2005 based on Plaintiff's failure to exhaust his administrative remedies, not because he "withdrew" the claim. Case no. 04-74866. Further, the unnotarized "affidavit" accompanying Plaintiff's response omits mention of the claims against Wingard except to say that his allegations were "the complete truth." *Doc. #123* at 33 of 50. "[A]n unnotarized

Finally, Plaintiff's claim that Wingard used racial slurs in addressing him is insufficient to state a constitutional claim. "An inmate has no right to be free from verbal abuse" *Smith v. Craven,* 61 Fed.Appx. 159, 162, 2003 WL 1465396, *2 (6th Cir. 2003)(citing *Ivey v. Wilson,* 832 F.2d 950, 954-55 (6th Cir.1987).

### C. Official Capacity Claims Should Also be Dismissed

Claims made against these Defendants in their *official* capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are subject to dismissal on the basis of the immunity granted by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Pursuant to *Will,* claims for monetary damages against present Defendants in their official capacities are barred.

While "[Eleventh Amendment] immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law," *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908), the exception does not apply here. Plaintiff original Complaint requests additional surgery and medication. However, Plaintiff now resides at a different MDOC facility and does not allege ongoing First or Eighth Amendment violations. *Plaintiff's Response* at 8 of 50. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996)(prisoner's transfer moots claim for injunctive relief).

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Doc. #121 in case no. 05-71140; Doc. #115 in case no. 06-13508] be GRANTED, dismissing these Defendants with prejudice. I further recommend that the same Defendants' earlier Motion to Dismiss [Doc. #109 in case no. 05-71140 and Doc. #102 in case no. 06-13508] be DENIED AS MOOT.

---

statement . . . . constitutes nothing more than unsworn hearsay that may not be considered on a motion for summary judgment." *Wright v. Swiatek,* 2006 WL 1880060, *5 (M.D.Tenn.2006) (citing *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996)).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 24, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on February 24, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 24, 2011: **Quentin Laster.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217