UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENTIN C. LASTER, #180908

       Plaintiff,                    Case Nos.  05-71140
                                                        06-13508

v.                                       District Judge John Corbett O'Meara
                                              Magistrate Judge R. Steven Whalen

DR. GEORGE PRAMSTALLER, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is a Motion for Summary Judgment filed by Defendant Paul Piper. *Dock. #137*, case no. 05-71140; *Dock.#131,* case no. 06-13508.[1] This motion has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that the motion be DENIED.

**I. BACKGROUND FACTS**

Plaintiff, formerly a Michigan Department of Corrections ("MDOC") inmate, originally filed suit on March 22, 2005, alleging Eighth Amendment violations by MDOC medical staff. Case no. 05-71140, *Doc. #1.* On March 6, 2006, the District Court adopted

---

[1] On June 26, 2008, I ordered this case consolidated with *Laster v. Pramstaller*, E.D. Mich. No. 05-71140, noting that the two cases "are, in fact, one in the same, involving the same claims against the same Defendants."

the undersigned's recommendation to dismiss claims based on Plaintiff's failure to exhaust his administrative remedies, dismissing the claim without prejudice. *Doc. #34-35.* On June 21, 2007, the Sixth Circuit reversed the District Court's judgment pursuant to *Jones v. Bock,* 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Case no. 06-1611. The case was reopened in this Court on August 7, 2007.

In the meantime, Plaintiff filed a second complaint on August 3, 2006, expanding on his original allegations to include events postdating the first action.[2] Case no. 06-13508. On June 1, 2007, Defendant Piper filed a motion to dismiss pursuant to 42 U.S.C. § 1997e(a). *Docket #29.* On January 16, 2008, this Court recommended that the motion be granted as to Plaintiff's Grievance no. RRF-04-04-00411-12z**,** Grievance no. RRF-04-04-00423-28a, and Grievance no. JMF-04-09-01956-12d2 but denied as to Grievance no. RRF-04-04-0387-12z. *Doc. #43* at 1.

On February 15, 2008, the District Court adopted the undersigned's Report and Recommendation. *Doc. #53.* In finding that RRF-04-04-0387-12z, filed against Piper, had been exhausted in accordance with PD 03-02.130, the District Court reasoned as follows:

> Plaintiff's Step I statement claims that Defendant ignored multiple requests for an examination and denied him pain medication resulting in debilitating pains and mental anguish. The grievance provided a sufficient basis for the MDOC to construe the claim against Piper. *Id.* at 4.

The cases were consolidated on June 26, 2008. *Doc. #73.* On August 1, 2011, the

---

[2]Docket numbers from this point forward refer to case no. 06-13508 unless otherwise stated.

District Court adopted my recommendation to deny Dr. Piper's renewed motion for dismissal of the Eighth Amendment claims. *Dock. #130, 120, 106.*

In regard to the exhausted claims against Defendant Piper, a medical doctor, Plaintiff alleges that the prison physician was deliberately indifferent to his medical condition prior to his 2004 hip surgery. Case no. 06-13508, *Complaint* at 14 of 50. He alleges that upon his arrival at the Ryan Road Facility on March 13, 2004, Defendant Piper "refused to do an 'arrival examination,'" did not provide him with pain medication, and failed to provide him with a wheelchair, crutches, and other special accommodations. *Id.* Plaintiff requests compensatory and punitive damages. *Id.* at 40 of 50.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary

3

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

4

## III ANALYSIS[3]

Defendant argues that given the lack of evidence, no reasonable jury could find him liable for Eighth Amendment violations. *Defendant's Brief* at 12-19. Because a number of Plaintiff's Eighth Amendment claims were dismissed as unexhausted, he points out that the claims currently before the Court are limited to events occurring in the narrow period of March 14 through April 4, 2004. *Id.* at 12.

Defendant, acknowledging that Plaintiff has a history of osteoarthritis of the left hip, provides a chronology of the treating records from January, 2004 forward. On January 14, 2004, orthopedist K.N. Mishra, M.D. examined Plaintiff, observing a "gross restriction of [range of motion]" due to a dislocated left hip. *Defendant's Exhibit C* at 1422. Dr. Mishra stated that "[h]ip replacement arthroplasty is the only recourse for this gentleman to get rid of some gross pain and difficulty with walking . . . ." *Id.* He noted that "other orthopedists"

---

[3] The fact that Plaintiff has not responded to the present motion does not relieve Defendant's burden of persuasion and production. *Celetox*, *supra*, 477 U.S. 317 at 331-332. "If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion." *Hunter v. Caliber System, Inc.,* 220 F.3d 702, 726 (6th Cir. 2000)(citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102-03 (9th Cir.2000)). *See also Hugueley v. Dresden Police Dept.,* 469 F.Supp.2d 507, 510 (W.D.Tenn.2007)("The fact that Plaintiff did not respond does not require granting Defendants' [summary judgment] motions."); *In re Underground Storage Tank Technical Services Group, Inc.,* 212 B.R. 582, 583 (Bankr.E.D.Mich.1997)(citing Fed. R. Civ. P. 56(e)).

had previously recommended a total hip replacement. *Id.* Dr. Mishra remarked that due to coronary artery disease, Plaintiff required a cardiac clearance before undergoing surgery. *Id.* On February 2, a request marked "routine" was submitted for pre-operative cardiac clearance *Id.* at 1806. Because of the apparent neglect or mishandling of the request, Plaintiff did not receive an EKG until March 11, 2004. *Id.* at 1538, 1533, 1408 1809. Treating notes from that day state that Plaintiff had not yet received a chest x-ray. *Id.* at 1408.

On March 14, 2004, Plaintiff was transferred to MDOC's Ryan Correctional Facility ("RRF"). *Id.* at 1408. At 10:30, Plaintiff was screened by an R.N. who obtained his medical history and requests for accommodation. *Id.* at 1408. Later the same day, Arthur Austin, M.D. performed a cardiovascular assessment. *Id.* at 1407. Dr. Austin wrote an order for Ultram, Zantac and Tylenol, as well as several heart medications *Id.* He ordered that his request for a month's supply of Ultram be "faxed in." *Id.* at 1532, 1534. He also ordered a two-week follow-up visit, a chest x-ray, and the accommodations of a bottom bunk, cane, elevator use, and shoe inserts. *Id.* at 1532. On March 26, 2004, Marcella Clarke, M.D., an MDOC Medical Director, denied the request for Ultram without explanation, directing that Plaintiff be given Tylenol instead. *Id.* at 1527.

Defendant Piper alleges that he first reviewed Plaintiff's medical records on March 29, 2004. *Id.* at 1405. Although the two-week followup examination ordered by Dr. Austin was scheduled for March 31, the appointment was rescheduled due to a "facility mobilization." *Id.* at 1405. Notes by medical staff indicate that Plaintiff requested but did

6

not receive Ultram on April 2. *Id.* Plaintiff again requested but did not receive Ultram on April 5 and 6. *Id.* at 1402. Treating notes state that he was in severe pain. *Id.* Defendant Piper reviewed Plaintiff's records on April 8, 2004, then resubmitted a request for Ultram. *Id.* at 1401. He also completed a request for a cardiology consultation. *Id.* at 1530-1531. On April 21, 2004, medical staff was summoned to Plaintiff's unit by a correctional officer after Plaintiff reported that he was unable move due to body pain. *Id.* at 1401. Defendant Piper examined Plaintiff on April 23, 2004. *Id.* at 1399. Plaintiff was cleared for surgery on April 29, 2004. *Id.* at 1807. Plaintiff underwent a hip replacement on August 2, 2004. *Id.* at 1796.

Under the Eighth Amendment, prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 703; *Farmer,* at 837.

Deliberate indifference to medical needs may be established by showing an

interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

Defendant does not dispute that Plaintiff's condition was "sufficiently serious" *See Comstock* 273 F.3d at 702. Instead, Defendant argues that Plaintiff cannot meet the subjective prong of an Eighth Amendment claim. Defendant argues correctly that Plaintiff received a timely examination after being transferred to RRF and that he was not responsible for the Dr. Clarke's March 26, 2004 decision to not renew a prescription for Ultram.

In contrast, Defendant's contention that he was not aware that Plaintiff needed Ultram (or another similarly effective opiate to control his pain) until April 8, 2004 is not as well supported.[4] *Defendant's Brief* at 17. Defendant admits that performed a chart review on March 29, 2004 but that "he performed the chart review solely for the purpose of reviewing the results of [a] March 23, 2004 chest x-ray study." *Id.*; *Exhibit B* at ¶¶9-10. He claims that he was unaware that Plaintiff submitted kites requesting a renewal of his Ultram prescription

---

[4]Treating notes indicate that as of April 19, 2004, the request was resubmitted to Dr. Clarke after no response was received. *Defendant's Exhibit C* at 1401.

8

on March 18, 26, or April 1. *Id.* at 18. Citing *Westlake, supra,* 537 F.2d at 860, fn 5 (6th Cir. 1976), Defendant also argues that even if Plaintiff could show that his treatment was negligent for the period between March 29 and April 8, 2004, it did not rise to the level of a constitutional violation. *Id.* at 19.

In regard to the need for pain medication, a question of fact exists as to whether on March 29, 2004, Defendant "perceived facts from which to infer substantial risk to the prisoner," drew the inference, then "disregarded that risk." *Comstock,* 273 F.3d at 703. Defendant asserts that he was not aware of Plaintiff's hip condition or the need for pain medication at the time he reviewed a chest x-ray on March 29, 2004. *Plaintiff's Brief* at 17. This contention might have supported judgment in his favor if had also stated he was given the x-ray but did not receive *any* treating notes, prescriptions for Ultram, or an orthopedic surgeon's recent opinion that Plaintiff required a total hip replacement.[5] *Defendant's Brief* at 17, *Exhibit* C.

However, Defendant's affidavit acknowledges that on March 29, 2004, he was indeed in possession of the medical records and in fact, "performed a review of Plaintiff's medical chart . . ." *Defendant's Exhibit B* at ¶9. His affidavit states that the "sole purpose of [the] 3/29/2004 chart review was to review the results of the . . . chest x-ray study." *Id.* at ¶10. However, to accept that Defendant was not made aware of the seriousness of Plaintiff's back

---

[5]That Defendant would have been given a chest x-ray that was disembodied from the rest of the record for is particularly implausible since the x-ray was part of a cardiac pre-operative workup for hip replacement surgery.

9

condition and the need for pain medication at that time, the Court would be required to assume that (1) Defendant reviewed the chest x-ray, but studiously ignored the remainder of the treating records showing that Plaintiff had been prescribed Ultram, required hip replacement surgery, and experienced "gross pain" and difficulty walking; *and*, (2) Defendant reviewed the chest x-ray without questioning the purpose of the imaging study, which was of course, part of a cardiac clearance for the hip surgery. Defendant's claim that he did not perceive Plaintiff's need for prescription pain medication is particularly weak, given that the medical record as of March 29, 2004 would also indicated that Plaintiff had previously taken Ultram on an ongoing basis. *Defendant's Exhibit C,* 1527.

Further, while Defendant avers that he did not know that he would be unable to examine Plaintiff on March 31, 2004 until arriving at the institution on the same day, he does not state why he was unable to order pain medication or otherwise intervene on Plaintiff's behalf for another eight days. The Court notes that the fact that Defendant did not control the scheduling of appointments, taken as true, did not prevent him from ordering Ultram and taking steps to complete the cardiac clearance. The record shows that Defendant's order for Ultram on April 8, 2004 was based on a review of the treating records rather than an examination. Defendant's demonstrated ability to act on Plaintiff's behalf when he wished (but his failure to do so in a timely fashion) supports the allegation that Defendant did not provide treatment until Plaintiff had filed at least one grievance against him.[6]

---

[6] Defendant denies that he was aware of several kites filed against him, but does not deny knowledge of Plaintiff's April 4, 2004 grievance. *Defendant's Exhibit B* at ¶24.

10

Further, while the exhausted grievance, dated April 4, 2004, alleges Eight Amendment violations occurring on and before that date, Defendant would also liable for the *consequences* of his nonfeasance occurring after that date. Thus, medical records stating that Plaintiff requested pain medication (April 2, April 5, 2004) and was "unable to walk" due to body pain (April 6, 2004) are relevant to the claim. The medical chart also shows that on April 21, 2004, medical staff was summoned to Plaintiff's unit after it was observed that he was unable to move.[7] *Id.* at 1401. Here too, a question remains as to whether Defendant's delay in ordering medication until April 8 was responsible for the April 21 medical crisis. At a minimum, given the facts presently before the Court, I find that a question of fact remains as to whether Defendant's failure to act on Plaintiff's behalf between March 29, 2004 and April 8, 2004 amounted to deliberate indifference.

## IV. CONCLUSION

For these reasons, I recommend that the motion for summary judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th

---

[7]Plaintiff alleges that on the same day he "was in such bad condition that he was sent to Detroit Receiving Hospital." *Complaint* at 14 of 50.

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 24, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 24, 2012.

Quentin Laster, #180908
861 Lakewood St
Detroit, MI 48215-2944

s/Johnetta M. Curry-Williams
Case Manager